BOGARD v. POWELL.

4-7809                                192 S. W. 2d 518

Opinion delivered February 4, 1946.

Rehearing denied March 11, 1946.

*Cecil E. Johnson, Jr., C. E. Johnson* and *Abe Collins,* for appellant.

*Charles A. Maze* and *Shaver, Stewart & Jones,* for appellee.

HOLT, J.   Dr. John T. Bogard died August 20, 1943. He left surviving, his widow, Effie E. Bogard, one son, John T. Bogard, Jr., and two daughters, Mary Bogard Powell and Jewell Bogard Hopson.   The present suit was brought by the two daughters, appellees, against their mother, Effie E. Bogard, and their brother, John T. Bogard, Jr., and Rose Marie Bogard, John, Jr.'s wife.

September 11, 1933, Dr. Bogard and his wife, Effie
E. Bogard, executed a warranty deed to a valuable 161-
acre pecan orchard in Little River county to their son,
John T. Bogard, Jr. This deed was kept in Dr. Bogard's
possession until May 8, 1937, when he delivered it to his
son, John, Jr., who had it recorded May 10, 1937. At the
same time that Dr. Bogard delivered this deed to his son,
John T. Bogard, Jr., delivered a warranty deed to his
father, Dr. Bogard, in which he, John, Jr., and his wife
reconveyed the property to Dr. Bogard and Effie E. Bo-
gard, his wife as tenants by the entirety, and this latter
deed was recorded by Dr. Bogard on January 6, 1939.
On May 4, 1937, Dr. Bogard recorded another deed dated
November 14, 1934, in Polk county, in which deed Dr.
Bogard and his wife conveyed to his son, John T. Bogard,
Jr., and his wife, four lots in Mena, Arkansas.

On November 26, 1936, a collision occurred between
a car driven by Dr. Bogard's driver and a car operated
by Miss Martha Pride. In February, 1937, Miss Pride
brought a suit *in tort* in Polk county, Arkansas, against
Dr. Bogard to recover damages, and in April following,
recovered a judgment in the amount of $200. In October,
1937, Dr. Bogard filed his schedule claiming exemptions
in the amount of $390 and thereafter an execution against
him was returned *nulla bona.* In 1938, Miss Pride sued
to cancel the deed to the Mena lots, *supra,* as having been
executed to defeat the collection of her judgment. Fol-
lowing the institution of this suit and before a decree
was entered, on May 18, 1938, Dr. Bogard satisfied Miss
Pride's judgment in full.

August 18, 1944, the two daughters, appellees, filed
the present suit against their mother and brother, in
which they alleged that the deed of September 11, 1933,
from their father and mother to their brother, John T.
Bogard, Jr., "was made for the sole purpose of defraud-
ing his creditors, or apparent creditors, or with intent
to do so; that it was made for the more specific purpose
of defrauding the judgment creditor (Miss Pride) in
the damage suit above referred to," and that the deed
from John T. Bogard, Jr., to his father and mother by

mistake created an estate in the entirety in Dr. Bogard and Effie E. Bogard. They prayed that the deed, *supra,* of John T. Bogard, Jr., and his wife to Dr. Bogard and wife, Effie E. Bogard, dated May 8, 1937, and recorded January 6, 1939, "be reformed to exclude the wife of John T. Bogard, Sr., as grantee, and title to the lands above described be vested in the estate of John T. Bogard, Sr., deceased." They further alleged that the deed of Dr. Bogard and wife to their son, John T. Bogard, Jr., dated September 11, 1933, and the deed of John T. Bogard, Jr., to reconvey to his father and mother as tenants by the entirety on May 8, 1937, were executed in fraud of Miss Pride, a creditor, and that these deeds were voidable, and prayed that they be canceled as fraudulent.

Appellants' answer, in addition to a general denial, affirmatively pleaded ratification and estoppel. The trial court found all issues in favor of appellees, and more specifically, (quoting from the decree) "that the deed from John T. Bogard, Sr., and his wife, Effie E. Bogard, dated September 11, 1933, conveying fractional northwest quarter (Frl. NW ¼) of section 19, township 13 south, range 31 west, in Little River county, Arkansas, to John T. Bogard, Jr., recorded on the 10th day of May, 1937, . . . and that the deed from John T. Bogard, Jr., and his wife, Rose Marie Bogard, conveying said land to John T. Bogard, Sr., and his wife, Effie E. Bogard, recorded on the 6th day of January, 1939, . . . and that the deed from said Effie E. Bogard, dated in or about 1944, conveying said land to John T. Bogard, Jr., recorded in deed records of said Little River county, Arkansas, be and each of said three deeds is hereby canceled, set aside and held for naught, and that the title to said fractional northwest quarter (Frl. NW ¼) of section nineteen (19, township thirteen (13) south, range thirty-one (31) west, containing 161.01 acres in Little River county, Arkansas, be and the same hereby is vested in fee simple absolute in the heirs at law of Dr. John T. Bogard, deceased, namely in Mary Bogard Powell, Jewell Bogard Hopson and John T. Bogard, Jr., as tenants in common, unencumbered by any claim of title, dower,

homestead or devise which may have been or might be made or set up by or for said Effie E. Bogard, her representatives, heirs or assigns.''

This appeal followed.

Appellees contended in the trial court below that the deed of conveyance dated September 11, 1933, by Dr. Bogard to his son, John, Jr., to the 161-acre pecan orchard here and the deed by which the son reconveyed the property to his father and mother, Dr. Bogard and Effie E. Bogard, as tenants by the entirety dated May 8, 1937, were executed in fraud of potential creditors and should be canceled. They further contended that as heirs of Dr. Bogard, they had a right under the provisions of § 69 of Pope's Digest to bring the present suit to cancel these deeds for their benefit. Section 69 provides: ''Any executor or administrator of any fraudulent grantor who, by deed, grant or otherwise, shall have conveyed an estate in land, tenements or hereditaments, with intent to delay his creditors in the collection of their just demands, may apply to a court of chancery by proper bill or petition and have the same set aside and canceled for the use and benefit of the heirs at law of the fraudulent grantor saving the rights of creditors and purchasers without notice. Act April 19, 1895, p. 165.''

While we think the preponderance of the testimony in this case supports the trial court's findings that these deeds were executed and the conveyance made with the intent to hinder and delay Dr. Bogard's creditors, it does not necessarily follow, on the record before us, that these deeds should be voided and canceled. They were voidable, but not void. The deed of September 11, 1933, from Dr. Bogard to his son, John, Jr., was not delivered, and did not become effective until it was delivered to John, Jr., in May, 1937. He recorded this deed May 10, 1937. At that time, Dr. Bogard had one creditor, Miss Pride, who held a judgment against him in the amount of $200. While Dr. Bogard had conveyed away his real estate, he was not insolvent and without sufficient personal prop erty to pay this judgment. This was evidenced by an attempted schedule which he filed disclosing personal

property in the amount of $390. Since Miss Pride's judgment was procured in a tort action, the law is well settled that Dr. Bogard was not entitled to the exemptions claimed. "Against an execution on a judgment in an action of tort defendant is not entitled to his chattel exemptions." (Headnote 4.) *Miller* v. *Mintun,* 73 Ark. 183, 83 S. W. 918.

When Dr. Bogard, on January 6, 1939, recorded the deed from his son which conveyed to the doctor and his wife as tenants by the entirety the pecan orchard tract, he owed no debts and was solvent. He could make any disposition of his property that he cared to make. Obviously, this disposition of the property wherein his wife would be well provided for, in the event that he should predecease her, was but the natural act of a husband prompted by decent motives. He might have destroyed this 1937 deed from his son reconveying the property to him and his wife, but instead, as was his right, he elected to record this deed and thereby ratify it. In so doing, the legal title passed back to Dr. Bogard and his wife, Effie E. Bogard, as tenants by the entirety and upon his death the title to the property vested in his widow, Effie E. Bogard.

We think the present case is ruled by the decision of this court in *Deniston* v. *Phillips,* 121 Ark. 550, 181 S. W. 911. In that case, Chief Justice McCulloch, speaking for this court, said: "Now, the other question relating to the intention of Deniston to convey the lands in fraud of his creditors remains to be disposed of. A statute of this state authorizes a suit to be brought for the benefit of the heir of a decedent to cancel a deed executed for the purpose of defrauding creditors. Kirby's Digest, § 81, (now § 69, Pope's Digest); *Moore* v. *Waldstein,* 74 Ark. 273, 85 S. W. 416). The evidence tends, as we have already stated, to show that the original purpose of the conveyance was to place the lands beyond the reach of Deniston's creditors, at least, that such was the design as to the deed of Mrs. Harmon. But the evidence shows that the deed was not delivered, if it was delivered at all, until long afterwards, and there is no evidence at all in the

record that at the time of the alleged delivery of the deed Deniston was indebted to anyone or that he had any purpose of defrauding creditors. On the contrary, the evidence showed that the deed to Royal was destroyed because the reason for the conveyance had ceased to exist. In other words, that there was no longer any creditors to defraud, and that, therefore, the fraudulent deed of conveyance to Royal could be destroyed. Our conclusion, therefore, on that branch of the case is that the decree of the chancellor cannot be sustained on the ground that it was a fraudulent conveyance; for even if the original execution of the deed was grounded in fraud, the title passed at the time of the delivery, and if there was no fraudulent design at that time and no creditors to suffer by reason of the conveyance, it cannot be set aside because of the original intention of the grantor at the time he executed the deed.''

Appellees argue that ''fraudulent intent'' alone is sufficient to invoke § 69, *supra*, without any showing of insolvency, at the same time, and rely strongly on *Moore* v. *Waldstein, supra*. We think, however, that this court made it clear in *Deniston* v. *Phillips, supra*, that no such interpretation as appellees place on the *Moore* v. *Waldstein* case was intended, but that this court intended to hold, and did hold, that § 69 could be invoked only when the result of the conveyance attacked was to leave the debtor insolvent.

The cases relied upon by appellees, we think, may be differentiated on the facts peculiar to each.

As has been indicated, in the present case, Dr. Bogard had, prior to his death, recaptured the property here involved; and at a time when he was solvent and owed no debts, elected to place the title in his wife and himself, which the law permitted him to do. No creditors are complaining here nor are any creditors parties to this suit.

In *Stewart* v. *Dunham*, 115 U. S. 61, 5 S. Ct. 1163, 29 L. Ed. 329, the Supreme Court of the United States said: ''It is contended by the appellees that these conveyances,

the last as well as the first, are fraudulent against creditors, *per se,* and void on their face; and such was the ground of the decree appealed from, as stated in the opinion of the court. To this we cannot accede. Assuming that the conveyance to Pintard, in trust, was of that character, according to the law of Mississippi, it does not follow that the subsequent sale and transfer, followed by delivery of possession, is tainted by the vice of the original transaction.''

And in *Sumner* v. *Hicks,* 2 Black (U. S.) 532, 17 L. Ed. 355, the court said: '' 'It is a settled principle that, a deed voluntary or even fraudulent in its creation, and voidable by a purchaser, may become good by matter *ex post facto.*' ''

We conclude, therefore, that the decree must be reversed and accordingly the cause is remanded with directions to dismiss appellees' complaint for want of equity.

MINOR W. MILLWEE, J., not participating.

GRIFFIN SMITH, C. J., dissents.