Michael C. **SANSONE** and Helen M. Sansone, Appellants,

v.

Andrew **SANSONE** and **West-Good, Inc.,** a Missouri Corporation, Respondents.

No. 40371.

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 21, 1979.

88 ■ ▬▬▬▬

Merle L. Silverstein, Michael A. Markenson, Rosenblum, Goldenhersh, Silverstein & Zafft, St. Louis, for appellants.

James L. Nouss, Donald R. Carmody, Sumner, Hanlon, Sumner, MacDonald & Nouss, P. C., Clayton, for respondents.

ALDEN A. STOCKARD, Special Judge.

Plaintiffs have appealed from an adverse judgment in their suit to set aside a sale of 160 shares of the common stock of West-Good, Inc. which had been pledged as security for two notes which were not paid and as to which recovery was barred by the ten-year statute of limitations. We affirm.

On December 1, 1962 appellants executed a note in the amount of $16,500.00 payable on demand to Andrew Sansone. On February 15, 1963, they executed a second note in the amount of $2,228.48 also payable on demand to Andrew Sansone. Each note was secured by a "Collateral Pledge Agreement" whereby appellants delivered to Andrew Sansone 160 shares of the common stock of West-Good, Inc., as security for the two notes. The agreements provided that in the event the notes were not paid "Andrew Sansone may, in his sole discretion, without notice to the [makers of the notes] sell all or any part of said stock at public or private sale to such purchaser, including himself, at such price, in such manner, and upon such terms as he may in his sole discretion elect, and shall apply the proceeds of such sale to the balance due on such notes or such liability."

Neither note was paid, and on January 9, 1975, Andrew Sansone conducted a sale to himself of the pledged shares of stock and caused the transfer to be recorded on the books of West-Good, Inc.

It is admitted by all parties that at the time of the sale of the shares of stock pursuant to the pledge agreements an action on the notes was barred by § 516.110 RSMo 1978.

Although there were other issues in the trial court, the only issue on this appeal is the contention that the trial court erred in refusing to set aside the transfer of the shares of stock to Andrew Sansone because the statute of limitations barred recovery on the notes and therefore the sale of the shares of stock was void and of no effect. Appellants rely on the first clause of § 516.150 RSMo 1978 which is as follows:

"No suit, action or proceeding under power of sale to foreclose any mortgage or deed of trust, to secure any obligation to pay money or property, shall be had or maintained after such obligation has been barred by the statutes of limitation in this state; * * *."

The essential question is: does the above language of § 516.150 include the security

transaction utilized in this case? If so, the sale of the shares of stock was not authorized because, as stated in *Oehler v. Philpott*, 263 S.W.2d 201, 203 (Mo.1953), "[t]he purpose of [the first clause of § 516.150] was 'to make the mortgage [or deed of trust] and note run concurrently, and when the note was barred the right to foreclose the mortgage [or deed of trust] was likewise barred.'"

■ The statute of limitation does not extinguish the debt but only bars the remedy. *Thompson v. McCune*, 333 Mo. 753, 63 S.W.2d 41 (1933). The indebtedness continues, and after action in the courts on the two notes was barred by reason of § 516.110 RSMo 1978, appellants were still indebted to Andrew Sansone for the amount of the notes. Appellants argue that "the term 'mortgage' as used in Section 516.150 includes the security agreements" utilized in this case, and further that it includes all "security agreements dealing with personal property."

In *Williams v. Rorer*, 7 Mo. 556, 558 (1842), cited and relied on by appellants, it was stated: "There is a distinction between a mortgage and a pledge, which is well ascertained both in the English and American law. A mortgage of goods differs from a pledge in this, that the former is a conveyance of title upon condition, and it becomes an absolute interest at law, if not redeemed by the prescribed time; and it may be valid without delivery. A pledge, or pawn, is a deposit of goods, with a right of redemption, on prescribed conditions. Delivery accompanies a pledge, and is essential to its existence. Only a special property passes to the pledgee; while the general property remains with the pledger." In that case the plaintiff "executed and delivered to [the defendant] an absolute bill of sale" for a mare, and the defendant delivered to plaintiff an instrument reciting that plaintiff "may redeem that * * * mare, by refunding me one hundred dollars, any time between this and the first day of June, and if not, she is my property in full." It was held: "The bill of sale * * * is absolute on its face and conveys the general

property to [defendant]; there is nothing in it or the subsequent agreement, which shows that [plaintiff] intended merely a delivery of the mare to be kept for security of a debt. If the general property passed, then the transaction is a mortgage, and not a pledge." See also Jones, Chattel Mortgages and Conditional Sales, Bowers Edition, § 4.

In Restatement of the Law, Security, § 1, a pledge is defined as "a security interest in a chattel or in an intangible represented by an indispensable instrument, the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty." In the Comment following this section it is stated that "The fundamental idea of the pledge is possession by the pledgee. If the creditor's security interest depends upon possession obtained and held primarily for security, he has a pledge. If his security interest depends primarily upon title or is some other form of non-possessory charge, his security interest may be valid, but it is something other than a pledge." See also *Hodge v. Truax*, 184 Wash. 360, 51 P.2d 357, 103 A.L.R. 420 (1935).

The Collateral Pledge Agreement in this case provided that each appellant "assigns, pledges, hypothecates and delivers to Andrew Sansone, * * * [a total of 160] shares of the common stock of West-Good, Inc., a Missouri corporation, together with all dividends thereon of any nature, and all income, rights and profits therefrom, as collateral security" for the payment of the notes executed by appellants. It is clear that each security agreement constituted a pledge as distinguished from a mortgage. See 14 C.J.S. Chattel Mortgages § 4, and 68 Am.Jur.2d Secured Transactions § 51.

It is the general rule, as stated in Restatement of the Law, Security, § 47, that unless otherwise provided by statute "A pledge is not terminated by the running of the statute of limitations against the claim secured by the pledge, * * *." See also *Hodge v. Truax*, supra, *Danielson v. Line*, 135 Fla. 585, 185 So. 332 (1938); *In re Washburn's Will*, 21 N.Y.S.2d 469 (Sur.

1940); *Weems v. Carter*, 30 F.2d 202 (4th Cir. 1929); and 53 C.J.S. Limitation of Actions § 10; 31 Am.Jur.2d Limitation of Actions § 25; Annotations, 103 A.L.R. 430 and 137 A.L.R. 928.

■ As noted, at common law there was a definite distinction between a mortgage and a pledge, and in construing § 516.150 RSMo 1978, to ascertain the intention of the legislature we must presume that it was aware of that distinction. *Person v. Scullin Steel Company*, 523 S.W.2d 801 (Mo. banc 1975). Therefore, when the legislature enacted the first clause of § 516.150 which made reference only to mortgages and deeds of trust it did not provide and apparently did not intend that the provisions of that statute apply to pledges. This was the ruling in *New York Life Ins. Co. v. Kansas City Nat. Bank*, 121 Mo.App. 479, 97 S.W. 195, 197 (1906), the only Missouri case we have found directly ruling this issue. In that case a person indebted to a bank pledged two insurance policies on his life as security for the debt. After his death claims by several persons were made for the proceeds. As to the issue now before us the court stated: "And it is further contended, as the note is barred by statute of limitations, so is the assignment. Upon this question we are referred to section 4276, Rev.St. 1899 [now the first clause of § 516.150 RSMo 1978]. *But, as that statute applies to mortgages and deeds of trust only*, it does not affect the question here." (Emphasis added.)

We have found only one case from another jurisdiction in which the court considered whether a provision such as that contained in the first clause of § 516.150 applies to a pledge. In *Hill v. Bush*, 192 Ark. 181, 90 S.W.2d 490, 493–4 (1936), a life insurance policy was pledged as security for the payment of a debt. The court stated that "Where a debt is secured by a pledge, as in the present case, the running of the statute of limitations destroys, of course, the right of recovery on the debt, but has no effect on the right of the pledgee to retain the property until the debt is paid and to enforce his claim against the property." Ref-

erence was then made to an Arkansas statute which, as paraphrased by the court, provided that "when the debt is barred, this shall be a sufficient defense in a suit to foreclose or enforce mortgages or deeds of trust." The court held: "But this has no application where property is pledged and delivered to the pledgee. It [the statute] does not mention property pledged in this manner."

The provisions of the first clause of § 516.150 are not applicable to the collateral pledge agreements in this case, and respondent's right to enforce the pledge agreements was not affected for the reason that an action on the notes secured by the pledge agreements was barred by limitations.

The judgment is affirmed.

DOWD, P. J., and SATZ, J., concur.